Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5676 | **DATE** | 3/13/2002 |
| **CASE TITLE** | Benjamin Peoples vs. Sebring Capital Corporation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion for class certification [6-1] is granted as modified.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| ☐ No notices required, advised in open court. | | | **Document Number** |
| ☐ No notices required. | | number of notices | |
| ☐ Notices mailed by judge's staff. | | MAR 1 5 2002 | |
| ☐ Notified counsel by telephone. | | date docketed | 35 |
| ✓ Docketing to mail notices. | | docketing deputy initials | |
| ☐ Mail AO 450 form. | | | |
| ☐ Copy to judge/magistrate judge. | | date mailed notice | |
| RJ/ea courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| BENJAMIN PEOPLES, | ) | **DOCKETED** |
| | ) | |
| Plaintiff, | ) | MAR 1 5 2002 |
| v. | ) Case No. 01 C 5676 | |
| | ) | |
| SEBRING CAPITAL CORPORATION, | ) Judge Joan B. Gottschall | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Benjamin Peoples alleges that defendant Sebring Capital Corporation ("Sebring") violated state and federal law in the course of two loan transactions. Peoples has moved for class certification as to the first of his four counts. For the reasons set forth below, the motion for class certification is granted with one modification.

### I. Background

On September 1, 2000, Peoples obtained two loans from Sebring in order to purchase his current residence, 7653 South Langley Avenue in Chicago. On July 23, 2001, Peoples filed this putative class action alleging in Count I that Sebring violated section 1638 of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., and subpart 18 of implementing Federal Reserve Board Regulation Z ("Regulation Z"), 12 C.F.R. pt. 226. In a secured credit transaction, section 1638 of the TILA requires the lender to provide "a statement that a security interest has been taken in (A) the property which is purchased as part of the credit transaction, or (B) property not purchased as part of the credit transaction identified by item or type." 15 U.S.C. § 1638(a)(9); *accord* 12

35

C.F.R. § 226.18(m) (requiring disclosure by the lender of "[t]he fact that the creditor has or will acquire a security interest in the property purchased as part of the transaction, or in other property identified by item or type").

In the first amended complaint,[1] Peoples explains that the TILA disclosure statements provided by Sebring in the September 1 transaction, "among other things, . . . failed to disclose that the loan documents created an extensive security interest in certain property, by means of the 1-4 Family Rider." (Am. Compl. ¶ 14.) The 1-4 Family Riders (a standard form prepared by Fannie Mae) amended the mortgages by adding a security interest in "building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, . . . now or hereafter attached to the Property, all of which including replacements and additions thereto." (Am. Compl. Ex. C, ¶ A, Ex. G, ¶ A.) The only security interest disclosed in each TILA statement is "in the property located at: 7653 South Langley Avenue, Chicago, Illinois 60619." Peoples argues that the disclosure statement is too narrow and violates the TILA. For relief, Peoples seeks statutory damages as specified in 15 U.S.C. § 1640, attorneys fees and costs, and any other appropriate relief.

Peoples defines the putative class as "all natural persons who satisfy the following criteria:"

---

[1] The motion for class certification preceded the first amended complaint, but the amendments did not substantially affect Count I. Peoples has moved for leave to file a second amended complaint, a motion to which Sebring objects. Resolving this motion will not impact class certification because Count I remains unchanged in the proposed second amended complaint.

2

a. They obtained a residential mortgage loan secured by real estate containing 1-2 dwelling units;
b. In one of which they or a family member resided;
c. Their transaction was documented as one subject to the Truth in Lending Act;
d. Their note and mortgage were originated by Sebring;
e. Their mortgage included a 1-4 Family Rider and Assignment of Rents creating a security interest in personal property not limited to rents;
f. Their Truth in Lending statement does not disclose the security interest in personal property created by the Rider; and
g. Their mortgage is dated on or after a date one year prior to the fling [sic] of this action.

(Am. Compl. ¶ 21.) So defined, the class consists of thirty-eight individuals, eleven of whom reside in Illinois (including Peoples). Peoples moves for class certification under Federal Rule of Civil Procedure 23(b)(3).

## II. Analysis

The burden is on the putative class representative to demonstrate that all the requirements for class certification are satisfied. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). Rule 23(a) provides that an individual may sue on behalf of a class only if

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Where, as here, a Rule 23(b)(3) class is proposed, the court must also find:

> that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3). The Federal Rules expressly permit classes, like the one proposed here, that are limited to only one count of a multi-count complaint. Fed. R. Civ. P. 23(c)(4).

In ruling on certification, the court has an independent duty to scrutinize the appropriateness of a class action and is not limited to arguments made by the parties. *In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1124 (7th Cir. 1979). And while the court may not consider the ultimate merits of the claim, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974), "[t]he boundary between a class determination and the merits may not always be easily discernible." *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 895 (7th Cir. 1981); *see also Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978) ("[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.") (internal quotation marks omitted). For example, it is sometimes necessary to determine the contours of the applicable law in order to predict "the difficulties likely to be encountered in the management of a class action." *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001). The court is not to assume the truth of factual allegations in the complaint that go to the issue of class certification, but rather, as would be true on a motion to dismiss for lack of jurisdiction, should resolve factual issues related to certification using any rational mode of inquiry. *See id.* at 675-77.

### A. Numerosity

The prerequisite of numerosity is satisfied if "the class is so large that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Impracticability, not impossibility, is the

touchstone. "The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980). "As a general rule, classes of 20 are too small, classes of 20-40 may or may not be big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough." *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988). Factors to be considered in addition to size include "the nature of the relief sought, the ability of the individuals to press their own claims, the practicality of forcing relitigation of a common core of issues, and administrative difficulties involved in interpretation and joinder." *Rosario v. Cook County*, 101 F.R.D. 659, 661 (N.D. Ill. 1983). The court may "make common sense assumptions in order to find support for numerosity." *NOW v. Scheidler*, 172 F.R.D. 351, 359-60 (N.D. Ill. 1997) (quoting *Evans v. United States Pipe & Foundry*, 696 F.2d 925, 930 (11th Cir. 1983)).

The parties dispute the relevant number of class members. Peoples would include all thirty-eight individuals who meet the specified criteria. Sebring argues the class must be limited to the eleven Illinois residents because state law controls the threshold question of whether a particular interest in property constitutes a "security interest" for TILA disclosure purposes. In response, Peoples contends that the definition of "security interest" does not vary from state to state, pointing out that all 50 states have adopted the Uniform Commercial Code article governing the creation of security interests in personal property and that Fannie Mae issued only one 1-4 Family Rider for use in all jurisdictions. What is more, Peoples urges, "[a]s long as defendant's documents purport to take a security in personal property, the fact that some court might later hold that the security interest is not enforceable does not affect defendant's disclosure obligations."

(Reply at 3.) Both sides' arguments blur potentially important distinctions, but Peoples reaches the right result.

Evaluating these competing contentions requires a nuanced appreciation of the role of state law in determining liability under the TILA. Regulation Z defines a security interest as "an interest in property that secures performance of a consumer credit obligation and that is recognized by State or Federal law." 12 C.F.R. § 226.2(a)(25). The official commentary states:

> The threshold test is whether a particular interest in property is recognized as a security interest under applicable law. The regulation does not determine whether a particular interest is a security interest under applicable law. If the creditor is unsure whether a particular interest is a security interest under applicable law (for example, if statutes and case law are either silent or inconclusive on the issue), the creditor may at its option consider such interests as security interests for Truth in Lending purposes.

12 C.F.R. pt. 226, supp. I, § 226.2(a)(25)-1.[2] The TILA generally demands accuracy, however, so the creditor's uncertainty must be bona fide and reasonable for disclosure to become optional. *Szumny v. Am. Gen. Fin., Inc.*, 246 F.3d 1065, 1071 (7th Cir. 2001). It follows that if state law conclusively establishes that the purported security interest is wholly without value, then believing it is a security interest would be unreasonable and disclosing it would violate the TILA. *See Smith v. Cash Store Mgmt., Inc.*, 195 F.3d 325, 328 (7th Cir. 1999). Nondisclosure would be mandatory, not merely permissible.

In the 1-4 Family Rider, Sebring purported to take a security interest in "building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or

---

[2]Federal Reserve Board regulations and commentary under the TILA are entitled to substantial deference. *Szumny v. Am. Gen. Fin., Inc.*, 246 F.3d 1065, 1069 (7th Cir. 2001).

used, or intended to be used in connection with the Property, . . . now or hereafter attached to the Property, all of which including replacements and additions thereto." (Am. Compl. Ex. C, ¶ A, Ex. G, ¶ A.) The state law definition of "security interest" would affect Sebring's potential liability under the TILA only if it clearly excluded all property that is described by this language. That seems very unlikely. It is true that some states prohibit certain security interests in household goods, 12 C.F.R. pt. 226, supp. I, § 226.18(m)-2, but the court is aware of no state that prohibits a security interest in *all* goods "of every nature" attached to a house or the land on which the house sits. Variations in state law definitions of "security interest" are immaterial so long as a security interest in one good that falls into this category is potentially viable in every relevant state. Sebring's argument to limit the class to Illinois residents therefore fails.

An alternative argument not raised by the parties derives from specific exceptions to the TILA disclosure requirement. If everything described in the additional security interest provision falls into an exception, Sebring is off the hook. The TILA does not require disclosure of every interest that qualifies as a "security interest" under state law. Regulation Z specifies that "security interest" for TILA purposes "does not include incidental interests such as interests in proceeds, accessions, additions, fixtures, insurance proceeds (whether or not the creditor is a loss payee or beneficiary), premium rebates, or interests in after-acquired property." 12 C.F.R. § 226.2(a)(25). Although neither the TILA nor Regulation Z defines these terms, Regulation Z provides that any term not defined by the regulation should be construed in accordance with state law or the contract. 12 C.F.R. § 226.2(b)(3). Peoples's mortgages do not define any of these terms but provide that the law of the jurisdiction in which the property is located governs. (Am. Compl.

7

Ex. B, ¶ 13, Ex. F, ¶ 15.) Presumably, the other class members' transactions were documented with comparable standard-form mortgages. This court must therefore consider whether jurisdictional variations in the definitions of these terms might impact Sebring's potential liability on Count I.

Only one of these terms has any chance of making a difference. Based on the "attached" language in the 1-4 Family Rider additional security interest provision, Sebring could argue that the provision includes only "fixtures." *See, e.g., Leon v. Washington Mut. Bank, F.A.*, 164 F. Supp. 2d 1034, 1037-39 (N.D. Ill. 2001). Article 9 of the Uniform Commercial Code, which has been adopted in all 50 states, defines fixtures as "goods that have become so related to particular real property that an interest in them arises under real property law." U.C.C. § 9-102(a)(41).[3] The test for determining when a good becomes "so related" has changed over time and still varies across jurisdictions. For the differences to matter, however, it must be the case that in one relevant jurisdiction a good automatically becomes a fixture when it is "attached" to real property. As far as this court is aware, non-permanent attachment was never deemed sufficient to convert a good into a fixture. *Cf. Nat'l Bank of Republic v. Wells-Jackson Corp.*, 193 N.E. 215, 218 (Ill. 1934) ("The early decisions in England, as well as in this country, were very firm in holding that when personal property became a fixture by annexation to the real estate *by some permanent method* the personal property lost its identity as such and became real estate.") (emphasis added). A calendar (or Post-it® note) does not become part of your house when you put it on the wall.

---

[3]Revised Article 9 took effect in 46 states (including Illinois) on July 1, 2001. The definition of fixture was moved to section 9-313(1)(a) but was substantively unchanged.

But even if the court is mistaken on this point or if the phrase "now or hereafter attached" implies the required element of permanence, "[t]here seems to be a general agreement today that annexation is no longer a matter of controlling importance." 35 Am. Jur. 2d, *Fixtures* § 4 (2000). If it later appears that attachment alone suffices in any relevant jurisdiction, the court will reevaluate the appropriateness of a nationwide class. Until then, the relevant number of putative class members will be thirty-eight.

And while thirty-eight is not an especially large number, courts have certified classes of this size and smaller. *See, e.g., Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969) (class of 40); *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319-20 (9th Cir.) (class of 39), *vacated on other grounds*, 459 U.S. 810 (1982); *Afro Am. Patrolmens League v. Duck*, 503 F.2d 294, 298 (6th Cir. 1974) (class of 35); *Riordan v. Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986) (class of 29); *Basile v. Merrill Lynch, Pierce, Fenner & Smith*, 105 F.R.D. 506, 508 (S.D. Ohio 1985) (class of 23); *Arkansas Educ. Ass'n v. Bd. of Educ.*, 446 F.2d 763, 765 (8th Cir. 1971) (class of 20); *Rosario*, 101 F.R.D. at 659 (class of 20); *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (class of 18). Sebring objects to Peoples's reliance on securities fraud cases where there is a "strong policy favoring certification," *Riordan*, 113 F.R.D. at 62, but most of the cases cited above arise in other contexts.

Two other factors also favor a finding of numerosity. The statutory damages sought here are too small to warrant undertaking individual actions. *Swanson*, 415 F.2d at 1333 n.9. At least twenty-seven of the thirty-eight potential class members reside in other judicial districts, which

9

increases the impracticability of joinder. *Allen v. Isaac*, 99 F.R.D. 45, 53, *amended in non-pertinent part*, 100 F.R.D. 373 (N.D. Ill. 1983). And it seems unlikely that the non-Illinois residents are concentrated in just one or two other locations. *Cf. Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56 (N.D. Ill. 1996) ("[T]he more geographically separated the proposed members are, the more joinder becomes impracticable.").

The court finds that Peoples's proposed class is sufficiently "large that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).

### B. Commonality

Rule 23(a)(2) requires a showing that "there are questions of law or fact common to the class." The threshold for commonality is not high. *Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir. 1990). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). A common nucleus of operative fact exists when "defendants have engaged in standardized conduct towards members of the proposed class." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). "[T]here need only be a single issue [of law or fact] common to all members of the class." *Gomez v. Illinois State Bd. of Educ.*, 117 F.R.D. 394, 399 (N.D. Ill. 1987) (quoting *Edmondson v. Simon*, 86 F.R.D. 375, 380 (N.D. Ill. 1980)).

Sebring has engaged in standardized conduct toward members of the proposed class. By definition, each class member's loan contract includes the same standard form 1-4 Family Rider and no TILA disclosure of a security interest in personal property. This common fact unites the class. Sebring offers several arguments for why its liability under the TILA might nonetheless turn

10

on individual differences among class members. These arguments are considered below in the predominance section. To clear the commonality bar, however, it is sufficient to observe that each class member's transaction was documented using the same allegedly deficient instruments. *See Demitropoulos v. Bank One Milwaukee, N.A.*, 915 F. Supp. 1399, 1417 n.19 (N.D. Ill. 1996).

## C. Typicality

Sebring sensibly does not dispute the typicality of Peoples's claims and defenses. Typicality requires substantial similarity, not perfect identity. *Allen*, 99 F.R.D. at 54. "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (quoting H. Newberg, *Class Actions* § 1115(b), at 185 (1977)). Sebring's practice of using the 1-4 Family Rider in residential loan transactions without disclosing a security interest in personal property gives rise to the TILA claim of each class member, including Peoples. Peoples's claims and defenses are typical.

## D. Adequacy of Representation

Rule 23(a)(4) requires that the named plaintiff will fairly and adequately represent the interests of the class. "Adequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 90 (7th Cir. 1977) (quoting *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975)). Peoples's counsel has substantial class action experience and has co-authored a

publication on residential mortgage litigation. This court has thus far perceived nothing which indicates that Peoples's attorney will not be "generally able" to conduct this litigation on behalf of the proposed class.[4] Neither does the court perceive any antagonistic interests between Peoples and the rest of the putative class. One might hope for a class representative with a larger monetary interest in the outcome, but given the nature of the alleged harm it seems improbable that any class member could seek more than statutory damages.

### E. Predominance

Rule 23(b)(3) requires "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Because no actual damages are sought or seem likely, individualized analysis of this fact-intensive issue will not be required. As noted in the commonality section, Sebring's standard loan documentation is clearly a fact common to each class member. This common fact would appear to give rise to a common question of law: whether the 1-4 Family Rider reasonably purported to create a security interest in personal property that was not disclosed as required by the TILA. Sebring has three arguments against commonality on this latter question. The first is that differences in state law governing the creation of security interests will require separate state-specific analyses. The court recognized this theoretical possibility above in the numerosity section, but found it exceedingly unlikely on the facts presented that state law variations would affect the sufficiency of Sebring's TILA disclosure.

---

[4]Sebring alleges several instances of attorney neglect in its response to Peoples's motion for leave to file a second amended complaint. The court reserves the right to revisit the question of counsel's adequacy as this action progresses.

Second, Sebring argues that, notwithstanding its usage of a common form, the question of what security interest was actually intended is unique to each loan transaction. Specifically, Sebring suggests that a class member's real estate contract might address the question of whether a security interest in personal property was intended. Unless the real estate contract defines a term or terms used in the 1-4 Family Rider in such a way as to wholly exempt the purported security interest from the TILA's disclosure requirement—for example, by incorporating the state law definition of "fixture" into the word "attached"—the court does not perceive any way in which the contract could affect its analysis with respect to Count I. Based on the standard form mortgage used in Peoples's loan transactions, this seems quite unlikely. *Cf. Kleiner v. First Nat'l Bank*, 97 F.R.D. 683, 694-95 (N.D. Ga. 1983) ("[A]t this point the fact that not all contracts are identical is not sufficient to overcome the apparent commonality of issues that they present.").

The court also rejects the broader notion that it will generally have to examine the parties' intent on a transaction-by-transaction basis. By definition, each class member's contract includes the same 1-4 Family Rider with the same critical security interest provision. To the extent this language is unambiguous (and Sebring has not argued otherwise), extrinsic evidence of intent will not be relevant. As far as this court is aware, this basic principle of contract law applies in every jurisdiction. *See id.* at 694 & n.13 (certifying class in part because state contract law on this precise point was the same in all five of the relevant jurisdictions). It is possible that the parties actually understood contractual terms in a way that would impact the court's analysis, if their intent was controlling. The problem for Sebring is that, as a general matter, the terms of the contract

13

govern. A standardized agreement "is interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing." *Restatement (Second) of Contracts* § 211(2) (1981). Sebring may have had reason to know that the borrowers would not have signed the contract if they believed Sebring would obtain a security interest in any personal property attached to their land or home, *id.* § 211(3), but it seems highly unlikely that the reason would vary from class member to class member. The court suspects that the meaning of the 1-4 Family Rider was not discussed in any of these transactions.

Sebring's third argument against commonality is that, because commercial and business loans are exempt from the TILA, 15 U.S.C. § 1603(1), determining liability will require an individualized determination of whether the proceeds of each class member's loan were used for business or commercial purposes. The commentary to Regulation Z lists five factors to be considered in making this determination: (1) the relationship between the borrower's primary occupation and the acquisition; (2) the degree to which the borrower will personally manage the acquisition; (3) the ratio of income from the acquisition to the total income of the borrower; (4) the size of the transaction; and (5) the borrower's statement of purpose for the loan. 12 C.F.R. pt. 226, supp. I, § 226.3(a)-2. One judge in this district has held that "applying these five factors to each possible member of the putative class requires highly fact intensive inquiries and that class certification would result in an undetermined number of mini-trials." *Roman v. First Franklin Fin. Corp.*, No. 00 C 7228, 2001 U.S. Dist. LEXIS 3968, at *7-8 (N.D. Ill. Apr. 2, 2001); *see*

*also Parker v. George Thompson Ford, Inc.*, 83 F.R.D. 378, 381 (N.D. Ga. 1979); *Berkman v. Sinclair Oil Corp.*, 59 F.R.D. 602, 609 (N.D. Ill. 1973).

The weight of authority, however, tilts in the opposite direction. Six courts in this district have rejected the argument that having to determine whether a transaction is commercial precludes class certification. *See Lang v. Winston & Winston, P.C.*, No. 00 C 5516, 2001 U.S. Dist. LEXIS 7480, at *6 (N.D. Ill. June 4, 2001); *Wilkerson v. Bowman*, 200 F.R.D. 605, 609-10 (N.D. Ill. 2001);

*Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C.*, 198 F.R.D. 503, 506 (N.D. Ill. 2001); *Blair v. Equifax Check Servs.*, 97 C 8913, 1999 U.S. Dist. LEXIS 2536, at *18-20 (N.D. Ill. Feb. 25, 1999); *Wilborn v. Dun & Bradstreet Corp.*, 180 F.R.D. 347, 357 (N.D. Ill. 1998); *Beasley v. Blatt*, No. 93 C 4978, 1994 U.S. Dist. LEXIS 9383, at *10, *13-14 (N.D. Ill. July 11, 1994); *see also Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 n.4 (7th Cir. 1974) (observing that the possibility that some transactions were commercial rather than personal would probably not prevent certification in a Truth in Lending Act class action because commercial transactions are "frequently . . . readily identified by the listing of the name of the business as the purchaser").

This court agrees with the majority position. "The need to show that the transactions involved are consumer transactions is inherent in every [TILA] class action. If that need alone precluded certification, there would be no class actions under [the TILA]." *Wilborn*, 180 F.R.D. at 357. Such a result would be inconsistent with the TILA's express provision for class actions. Moreover, the court is convinced that the commercial determination will not require unduly

15

burdensome individualized inquiry. It appears that the nature of the loan can be determined on the basis of Sebring's own business records. *See Haynes*, 503 F.2d at 1165 n.4. The uniform residential loan application includes the amount of the loan, whether the property will be a primary or secondary residence or an investment, the applicant's occupation, the amount and sources of income, and a schedule of other real estate owned. In most cases, this document alone will decide the commercial purpose issue. *Cf.* 12 C.F.R. pt. 226, supp. I, § 226.3(a)-2 (relevant factors include the size of the transaction and the borrower's income, occupation, and statement of purpose). Other times, the appraisal, as explained below, will resolve lingering uncertainty. Unlike the plaintiff in *Roman*, Peoples has provided support for the proposition "that the lender will have documents showing the purpose of each loan." 2001 U.S. Dist. LEXIS 3968, at *8 n.4. "Finally, if there is genuine confusion over this issue, class members can be asked a single question to determine whether they are entitled to relief." *Wilkerson*, 200 F.R.D. at 610 (N.D. Ill. 2001) (citing *Wells v. McDonough*, 188 F.R.D. 277, 279 (N.D. Ill. 1999)).

Although the commercial purpose issue does not defeat predominance, it does require the following additional provision in the class definition: The credit transaction involved an extension of credit not primarily for business or commercial purposes. *See* 15 U.S.C. § 1603(1). Because the proposed class consists of only thirty-eight members, this new criterion raises a numerosity concern. If a substantial number of potential class members are excluded by this limitation, then the class may no longer be so large as to make joinder impracticable. Should this turn out to be the case, the court will not hesitate to decertify this class. At this stage, however, that possibility

does not appear likely. The class is already limited to transactions involving real estate with one or two dwelling units, in one of which the borrower or a family member resided. Because the value of the land plus one of the two dwelling units will almost always exceed the value of the other unit by itself, this limitation makes it exceedingly unlikely that more than half of the loan proceeds went to commercial purposes. The appraisal can rule out this possibility and identify the rare potential exception.

### F. Superiority

Finally, "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). It seems quite likely that the vast majority of class members is unaware of the alleged TILA violation. Even if they were so informed, they would probably lack sufficient incentive to bring individual actions. No actual damages are alleged, and the maximum potential recovery for statutory damages in individual actions is $2000 per person. *See Haynes*, 503 F.2d at 1165 (in deciding superiority question, court should consider the "inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually"); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("Class actions . . . may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.") A class action is an efficient and appropriate method of resolving this controversy.

### III. Conclusion

People's motion for class certification is granted with the addition of one criterion to the

class definition: The credit transaction involved an extension of credit not primarily for business or commercial purposes.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: March 13, 2002